Good morning, your honors. I'm Daniel Kaplan. I represent the appellant Dushan Lamont Broyles. Mr. Broyles admitted at an admit-deny hearing in his revocation proceeding to three grade C violations of his supervised release conditions. These three violations, I'm sorry, four violations, were of two types, small-scale personal drug use and technical violations such as leaving the district to appear in front of the judge's office. He sentenced him and failing to report to the probation officer. The guidelines chapter seven recommended sentence for grade C violations by category criminal history of three is five to 11 months. This was Mr. Broyles' first revocation of a supervised release. However, despite the guidelines recommendation of five to 11 months, the judge sentenced Mr. Broyles to three years of incarceration. In effect, when you look at the chapter seven recommendation, the judge turned the structure of chapter seven upside down and sentenced grade C violations as if they were grade A violations. Now, in the case of Gall v. United States, the U.S. Supreme Court stated several times that although they rejected any kind of rigid mathematical framework and they rejected any requirement that so-called extraordinary circumstances be present to depart from the guidelines range, nevertheless, it was perfectly appropriate and necessary for this Court and other circuit courts on reviewing a sentencing decision. To consider the extent of a deviation from the guidelines recommendations. And now after Booker, of course, chapter seven recommendations are advisory in the same sense as the rest of the guidelines are. And to consider whether the extent of the deviation is supported by what they call sufficient justifications or significant justifications with the level of sufficiency, the level of significance somehow being proportional to the degree of the variance. Well, the degree of the variance here is, of course, extremely high. As I said, the Court essentially turned the chapter seven structure upside down and sentenced the bottom as if it were the top, more than tripling the recommended range. So the question this Court must address in reviewing that sentencing decision is, what are the justifications for departing to that extent that are so sufficient, that are so significant, that they justify such an extreme departure? And when you look at the reasoning that the district judge gave for this sentencing determination, you don't see any justifications of any particular significance. What you see is very run-of-the-mill reasons for revoking supervised release, reasons for imposing that sentence. Well, perhaps I'm mistaken, but it struck me in reading this that the district judge was reacting to the testimony and recommendation of the probation office in saying, look, we just he's incapable of making it unsupervised release. We've had it with this guy. I mean, that seems to be that, although the district judge didn't articulate that particularly as a reason, it looked to me as though his supervisor had just thrown up her hands and said, I've had it. Why isn't that enough? Well, Your Honor, that's enough to justify what's called a terminal disposition, where there's no further supervised release after the incarceration. But that's not the question presented in this appeal. The question is, why three years of incarceration? We understand, and in fact, Mr. Broyles' trial attorney said in that hearing, Your Honor, we can't deny. Supervision does not seem to be working for Mr. Broyles. But he said, but a sentence to the extent the probation officer is recommending here, the probation officer recommended five years, it's way out of proportion to the violations of supervised release. Why that degree of incarceration? What you've said makes perfect sense. I'm sorry. I didn't mean to interrupt you. He had numerous violations. It wasn't just one, right? Yes, he admitted to four. Right. And one of them was violated in the law. One of them was what? Violated in the law. Didn't he get arrested? There was a marijuana possession. Right. There was use of marijuana on a particular date. There was a failure to report to the probation office. That's what I call a technical violation. And there was leaving the district without permission, which another technical violation. He did that because he thought he would prefer to appear in front of the judge in New Mexico who sentenced him, obviously ill-advised and not consistent with the conditions. Do you think just leaving the district is a technical violation? Yes, because it's not illegal in and of itself. It's only a violation of the terms. That's what I mean by technical violation. It's a pretty serious violation, though. I mean, from a district court perspective, somebody leaving the district against the orders of the judge when they're being supervised in the district is simply not a technical violation. Showing up an hour late for an appointment is a technical violation. Okay. I won't fight you in how it's described. I do think that that's not a freestanding criminal violation, albeit it's serious. You know, I have to say that, you know, I would wholly agree with you that a variance, and I don't think this was a departure, but a variance from the guideline range up to three years is not a minimal variance. But in this case, was this his first problem? He had problems before, but no revocations before. Right. But he'd been given chances before. That's the point. And each time he'd been given a chance, what had happened? He had violated the trust of the court. And I think that Judge Thomas is exactly right. Whether that's sufficient or not, I don't know. But I think he was exactly right in saying that what happened is that this gentleman came before him again with an obvious serious drug problem, and the judge said, you know, it's time for him to be inside and get some serious inpatient treatment, where we know he ain't going to leave the district and he isn't going to wander around, he isn't going to get any more drugs. I mean, that's what it looks like to me. It's just that simple. I don't think he was trying to be punitive here. Well, Your Honor, I'd say a couple of things to that. The judge didn't incorporate the treatment concept into the sentence that he imposed. It was simply a term of incarceration. Treatment had been something Mr. Borrella had tried, and apparently that hadn't succeeded for him. He's going to get any – I can promise you that any district judge knows that if they send somebody to jail for three years, the VOP is going to automatically put them in drug treatment if they come in for drugs. Okay. That's a guarantee. It used to not be, but it is today. Okay. That certainly was not expressed in the judge's rationale. But another thing I want to say is the decision for the court in the Simtob case, which Your Honor authored, has a very thorough explanation of what it is that would justify more severe sentencing and revocation of supervised release. And something that is stressed in the Simtob decision is that if the violation shows a carrying through of the same types of offense that underlay the initial sentence that led to the imposition of supervised release, it shows that there's a need perhaps for a greater sentence for the permissible purposes of deterrence, protection of the public, and that sort of thing. Now, in this case, Mr. Broyles was initially sentenced for having 58 and a half grams of cocaine, apparently for the purpose of sale, and he pled to possession with intent to distribute cocaine. The offenses that he admitted to in this revocation proceeding don't dovetail with that offense that led to the initial imposition of supervised release. It's small-scale, street-level, personal consumption, drug use, marijuana, and marijuana that he said might have had some cocaine on it. He didn't admit that he ever purchased cocaine. So really, we're talking about some small-scale, minor use here, not something that shows such a firm pattern connecting to his initial sentencing that led to supervised release that under the reasoning of the Simtob case would justify his sentence. But the time that he'd been released until the time that he – that there were revocation proceedings, how long – how much time had elapsed? I think it was a couple of years, Your Honor. And he – had there been any notifications by his probation officer to the court about minor violations that they weren't going to do anything about, you know, they weren't going to? The probation officer mentioned in the hearing, having written some memos to the judge about problems with Mr. Boyles not always cooperating. But he did for periods of time have clean urine tests and was obviously not using drugs. And as I said, what he admitted to here is not any dealing in drugs, not any possession of any large amount of drugs, just minor personal use. Then it seemed to be the sense that supervised release ought to be terminated. Is that correct? Yes. And again, the trial attorney admitted it probably should be terminated. It wasn't working for him. Really, what we're left with is why this extreme term of incarceration, what justifies that? And under the reasoning of the Sentab case, it doesn't fit. Those rationales don't fit these facts to impose an extreme sentence and triple the guidelines range and turn the framework of Chapter 7 upside down. I'd like to reserve the rest of my time for rebuttal. Thank you, counsel. Thank you, counsel. May it please the Court. I am on behalf of the United States in this matter. The issue in this case is whether the district court imposed a reasonable sentence. Under the facts and circumstances of the case that we're facing, the district court, the sentence was reasonably reasonable. How do you distinguish this case from the ordinary case you see where somebody violates, you know, misses a bad urine sample and is using drugs? To me, although there were some indications of violence and the fact that this guy is an addict and keeps repeating, it didn't really distinguish itself from a lot of cases we see, and there's a threefold increase over the guidelines. Well, there are a couple of answers to that, Your Honor. And the first thing I would note that really what we're arguing over here is of 12 months because the district court imposed a 36-month sentence, and on page 11 of the excerpt of record, the defense attorney said that perhaps 24 months would be. I remember seeing that. He was asking for the defense attorney himself suggested 24 months and then the termination of supervised release. Isn't that right? Yes. So really he just went up another year. Yes. So that is what we're dealing with. You know, a year is a substantial amount of time. Certainly it is, Your Honor, but when you look at the nature of this defendant and why he had that reason, it was certainly reasonable for a district court to believe that three years rather than two years was appropriate. Would you point to those factors that you think show that this was a reasonable sentence? Sure. First, as noted on pages 14, 15, and 18 of the excerpt of record, the district court identified five reasons for a sentence. It said that the defendant was unable and willing to follow an armed arrest. He cannot maintain a drug-free lifestyle. He involved himself in the criminal element. He had a lot of police contacts. He engaged in violent behavior. And what the government believes is the most significant is that the judge found that supervision would not be fruitful. The defendant said himself in a sentencing that the probation officer had nothing to offer him. What's the explanation in the record for not accepting the defense recommendation of 24 months versus 36?  The acts of the defendant are detailed. The defendant goes in a verbal altercation with the probation officer. He tests positive from the beginning of July 22, 2005. He failed relapse treatment. He stayed clean until May of 2007, but the Phoenix Police Department called the probation department because they saw him in a high-traffic drug area. He was indicted for an offense in Santa Cruz County, Arizona. He was arrested and charged with domestic violence. He was involved in hit-and-run collusion. He didn't inform his probation officer of his police contacts when he was arrested. He tried to kick the window out of the patrol car. He had been sentenced for that violation that he pled guilty to in state court, correct? I'm not sure, Your Honor. That was pending at the time of this. Yes. At the time of the revocation proceeding. Yes, it was. Do you think the district court judge sort of just added a little extra punishment here? No, Your Honor. Well, I think that the – well, I know that the district court did in this case, is that look at the facts and the circumstances. It's about violence. Yes. And violent behavior. That suggested to me that he was sort of, you know, adding a little extra time for this guy's conduct. But – Which is not the primary factor you're supposed to consider in revocation proceedings. But what the district court did is it looked at the – it looked at the distort of the circumstances. And it disagreed with the government, which had asked for a five-year term. The probation office, which had the most contact with the defendant, asked for five years as well. The district court, in effect, cut the defendant abreast. What we have here is merely a difference between what the judge imposed and what the defense agreed to be appropriate of 12 months. Do you think it's appropriate to look at the extent of the deviation from the guideline recommendation? Your Honor, I apologize for not having the case law at the tip of my fingers. But in other cases, I have dealt with that issue. And I believe that the district courts have held that an extreme deviation does not need to be justified by extreme facts. The test is whether the sentence is substantively reasonable. And what – Well, I'm still trying to figure out what that means. For, you know, for a couple of years now, I'm still trying to understand what our role in sentencing is. And that – that concern that you have, Judge, highlights why it's very problematic. There really is no role for us in this. We just let the district court judges do whatever they think is right. End of story. There's simply not true, Your Honor. Do we have any case where we have reversed a sentence for unreasonableness since Gall or any of those? A couple of unpublished cases.  Block 9, I believe, is the case of 542, 543, 546. That, however, was the case where the district court judge was under the lenient and that the government appealed and was successful. This court does indeed have a role in ensuring that a sentence is reasonable. But in this case, under these facts, given that the defendant is not amenable to supervision, the fact that he has continued to have contacts and drug activity, and given that the defense attorney conceded that two years would be appropriate, it's just unreasonable for the district court to believe that three and not two years was appropriate. If there are no further questions. Thank you. Thank you. Counsel, I thank you. Mr. Kavanagh. Thank you. The government suggests that we're really only arguing about a year here and that the district court, quote, cut the defendant a break. The underlying premise is this court must surrender its own review to the decisions and the recommendations of the probation officer and to the arguments made by defense counsel. Well, one of the things that we have to look at is to make sure that the district court, in imposing a sentence, imposed a reasoned sentence, having carefully considered the 3553 factors. That's mandatory, right? Right. Both under the Supreme Court law and under Ninth Circuit precedent. Correct. In the cases, right? So that's what we have to do. And you've essentially conceded that the district court explained its sentence adequately. You haven't argued that the district court did not explain its sentence. That's correct. So you're really only arguing reasonableness. Now, the district court could have imposed a five-year sentence, right? That was what was recommended. Could have, not in the sense that it would be reasonable. No, I'm not suggesting for a moment that it would be reasonable. I'm just saying that legally it could have done that. That was a stat max. And that was what was recommended. So the district court did not do that, did not follow the probation officer's recommendation. Doesn't that give an indication that the district court was not inflamed to the extent that the judge simply shot off a sentence in anger against somebody, but rather did some careful reflection, even though the sentence may be higher than what you'd hoped for? Yes. But I don't see any reference in this Court's case law or the Supreme Court's case law to the notion that that's what the purpose of this Court's review is, to determine whether the judge was blamed. What is the standard review? Isn't it abuse of discretion? For a decision that's substantive in nature, it's abuse of discretion. But you've already conceded that the judge followed the proper procedure. So the sentence is substantive. So all we're looking at is adequacy. It's correct. Okay. Let me return to a question that Judge Paez posed. Do you think our review is any different if there is a substantial difference between the guideline range and the sentence imposed, whether up or down? Yes. And what do you think the nature of our review is? I think the review is, might be described. Post call. I'm sorry? Post call. Post call. The review might be described as more searching. In my mind, there's an analogy to cases in the equal protection area or in the fundamental rights area of constitutional law where fundamental right is burdened or equal protection where a suspect classification is at issue. There's a higher level of scrutiny and more compelling justifications are required. I think it's analogous to that context or the First Amendment context where political speech is burdened. I think that this Court must require somewhat more compelling, stronger justifications for a sentence that goes farther outside the guidelines range without falling into extraordinary circumstances or rigid mathematical formulas. So what is an approximation? When do you think this additional scrutiny ought to kick in? Well, line drawing is what's prohibited by the Supreme Court, but some kind of assessment is what's required. So it gets touchy, but when you're more than tripling and you're turning the framework upside down so the bottom level C is sentenced as a top level A, I think this Court is required under Gall to require especially compelling justifications. It can't just be run-of-the-mill, everyday, supervised release violations, which is all we have here. Thank you. Thank you, counsel. The case report will be submitted.
judges: Thomas, Paez, Ezra